UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TINA MCKNIGHT,
    Plaintiff,

    v.

MENTAL HEALTH ASSOCIATION OF
CONNECTICUT,
    Defendant.

No. 3:13-cv-1436 (SRU)

## RULING AND ORDER

Tina McKnight, appearing *pro se*, alleges race and color discrimination under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. According to her allegations, McKnight was employed as a case manager for the Mental Health Association of Connecticut from approximately October 2007 (Doc. # 30, at 1) until she quit (which she alleges was constructive termination) in October 2012 (Doc. #1-1, ¶ 27). In that time, she says, her performance evaluations were good or excellent (Doc. # 1-1, ¶ 6) and she was promoted twice—first from per-diem case worker to case manager, and then to senior case manager (Doc. # 30, at 1). Eventually the acting CEO approached her about participating in something called the "Wise program" and receiving additional pay for it (*id.*), telling her that it was a great opportunity for her and that she would be good at it (Doc. # 1-1, ¶ 8). McKnight alleges that she did pursue that opportunity, but that she did not receive the extra compensation; and that when she spoke up about that, she was treated poorly and retaliated against (Doc. # 1-1, ¶ 30). After she quit or was constructively terminated, she filed suit against her former employer in state court, and the defendant removed the case to federal court in September 2013.

The defendant filed a motion to dismiss in December 2013, arguing that McKnight had not alleged any facts that could support a claim of race or color discrimination (Doc. # 23). I

granted that motion without prejudice and allowed McKnight thirty days to file an amended complaint stating a cognizable claim (Doc. # 29). That period lapsed, but because McKnight is a *pro se* litigant and because she indicated that she had misunderstood the order, I allowed her some additional time, and she filed an amended complaint on October 3, 2014 (Doc. # 30). The defendant filed another motion to dismiss (Doc. # 31), in substance identical to the first, on the ground that the amended complaint had not corrected the problem with the original. Apparently in response, McKnight filed another amended complaint (Doc. # 33), captioned as a motion to amend the earlier amended complaint. The defendant then filed an objection (Doc. ## 34, 35) that is largely and in essence a renewed motion to dismiss attacking the proposed amended complaint.

As an initial matter, I grant McKnight's "motion to amend" (Doc. # 33) and take that "motion," which is really a proposed amended complaint, as the operative complaint. I accordingly construe the defendant's objection (Doc. ## 34, 35), which is responsive to that complaint, as a supplement to the defendant's pending motion to dismiss (Doc. # 31), and I consider them here in conjunction.

The bulk of the pleadings and all of the defendant's arguments treat this case as a Title VII case, but in fact McKnight refers in her pleadings at least passingly both to Title VII and to Section 1981 (Doc. # 1-1, at 8; Doc. # 30, at 3; Doc. # 33, at 1). She does not plead claims under both statutes very clearly throughout her complaints, but because she is a *pro se* litigant, I construe her pleadings liberally as bringing claims under both. The Title VII claim faces a threshold problem: a plaintiff generally must exhaust administrative remedies before bringing a Title VII claim, *see* 42 U.S.C. § 2000e-5(e), and it is not clear from the pleadings whether McKnight has done so, because she did not attach a right-to-sue letter. She did not mention the

issue at all in her initial complaint, and though she states in her most recent amended complaint that "[a] Notice of Right to Sue was issued by Commissioner of Human Rights and Opportunity" and that a copy was attached as an exhibit (Doc. # 33, at 2), the referenced exhibit is only a notice that a charge of discrimination had been received by the Connecticut Commission on Human Rights and Opportunities. She might have eventually received a "Notice of Right to Sue," but that is not what she attached, and the outcome of the charge she filed with the agency is not indicated in the attachment.

That problem, of course, might be fixed simply by attaching a different piece of paper, and it only affects the Title VII claim, anyway.[1] It does not affect McKnight's Section 1981 claim, because administrative exhaustion is not required by that statute. The bigger problem, though, which affects both the Title VII and the Section 1981 claims, is the problem the defendant identifies in its motions: McKnight's allegations portray several years of seemingly happy employment—in which she was positively reviewed, twice promoted, and apparently well-regarded—that took a sudden turn for the worse over a dispute about extra compensation for participation in the "Wise program." McKnight has not alleged any specific and particular facts that create an inference that the dispute or any hostility she may have felt was related to her race rather than merely a conflict over compensation. Many employees feel mistreated and wronged by their employers (sometimes probably correctly, and sometimes probably not), but that feeling alone, and sometimes even actual mistreatment, does not show a civil rights violation. Some employees feel that their race is a factor in their perceived mistreatment (sometimes probably correctly, and sometimes probably not), but in order for their claims to survive a motion to dismiss, they need to articulate particular and specific facts that give rise to

---

[1] It may also be waived. *See Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("We hold that presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court . . . ." (quotation marks and brackets omitted)).

3

an inference of racial discrimination. McKnight has not done that, and therefore the motion to dismiss her complaint must be granted.

However, I also note that in a few places the most recent complaint refers passingly and somewhat vaguely to conduct that, if fleshed out, *might* meet the pleading standard and survive a motion to dismiss. McKnight refers to "insults toward her race" (Doc. # 33, ¶ 10) and a submission to the grievance committee "in regards to the racial insults" (*id.* at ¶ J), though she does not specify any additional detail about the nature or circumstances of the alleged "insults." She did attach an email with the subject-line "Grievance" to an earlier complaint (Doc. # 30, at 11), though it is not clear whether that is the submission to the grievance committee referenced in the later complaint. That email seeks to file a grievance against a supervisor "for holding a personal grudge against me" (*id.*), and a personal grudge likely would not give rise to an inference of racial discrimination. But the email also says that "[t]here is so much more that I would like to tell & share with you in person," (*id.*) and there are no allegations of what that "more" referred to. The most recent complaint also alleges that one of McKnight's supervisors "targeted only African Americans and did whatever she had to do to get us fired or to resign" (Doc. # 33, ¶ F), though it contains no allegations that specify what that supervisor actually *did* to "target" African Americans. The most suggestive allegation, and the closest call on a motion to dismiss, was that McKnight felt judged on the basis of her race, clothes, and hair "because of the comments by management that only those kinds of people always want more [than] what they deserve" (*id.*). Merely *feeling* judged is not sufficient to state a claim of unlawful racial discrimination, but if management made specific racial "comments" or "racial insults" or comments about "those kinds of people," those facts might give rise to an inference of racial discrimination. I cannot determine on the basis of McKnight's factual allegations whether she

was merely suspicious that her race was a factor in the negative treatment she says she faced while engaged in a dispute over compensation, or if specific comments or conduct of management suggested a racial motive. Because of that ambiguity in her complaint, and because she is a *pro se* litigant, I will permit one more opportunity to re-plead.

The motion to dismiss is granted and the complaint is dismissed for failure to state a claim. If, in fact, McKnight's negative experience was the result of a personality conflict and a dispute over compensation for participation in the Wise program, and she is merely suspicious of a racial component, then this case cannot proceed and she should not amend her complaint. But if there are specific facts about the conduct or comments of management that create an inference of racial discrimination, then she may file a new complaint alleging those facts clearly and in detail within thirty days. Additionally, if she has received a right-to-sue letter following her complaint to the Connecticut Commission on Human Rights and Opportunities, and if she does choose to file an amended complaint, then she should attach the letter to her amended complaint in order for a Title VII claim to proceed.

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of August 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge